UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HEATH LAYTON,<br><br>    Plaintiff,<br><br>    v.<br><br>EAGLE ROCK TIMBER, INC.,<br><br>    Defendant. | Case No. 4:17-cv-00259-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are Plaintiff Heath Layton's Motions in Limine (Dkt. 24) and Defendant Eagle Rock Timber, Inc.'s ("ERT") Motions in Limine (Dkt. 34).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons outlined below, the Court will GRANT in PART and DENY in PART each Motion.

## II. BACKGROUND

ERT is a construction company located in Idaho Falls, Idaho. Layton is a former employee of ERT who worked primarily as a project manager. Layton contends that he became disabled when he injured his ankle off the job in March 2018. Layton alleges that ERT terminated him because of his disability even though he could still perform the

MEMORANDUM DECISION AND ORDER - 1

essential functions of his job. ERT, on the other hand, claims that Layton resigned his employment even though the company wanted him to stay.

Upon his termination, Layton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Idaho Human Rights Commission, alleging that ERT terminated him because of his disability. After an investigation, the EEOC issued a Notice of Right to Sue.

On June 14, 2017, Layton filed suit against ERT alleging a single cause of action: disability discrimination in violation of the Americans with Disabilities Act ("ADA"). Neither party filed any discovery motions, nor were dispositive motions filed at any time.

In anticipation of the upcoming trial, and pursuant to the Court's trial order (Dkt. 22), both parties filed motions in limine seeking to preclude certain evidence and testimony at trial. The Court will address each motion in turn.

### III. LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.*, No. 4:15-CV-00156-DCN, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (citation omitted) "a district court has discretion in ruling on a motion in limine." *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## IV. ANALYSIS

### A. Plaintiff's Motions in Limine[1]

1. Layton's DUI

**GRANTED in PART, DENIED in PART**.

In his first Motion in Limine, Layton asks the Court for an order prohibiting any mention of—or evidence related to—his arrest for driving under the influence ("DUI") in September 2015. Layton asserts that this episode is irrelevant to the claims at issue and would be highly prejudicial if presented to a jury. In contrast, ERT believes that this event is relevant and that it will actually benefit Layton if addressed.

---

[1] For brevity, and due to time constraints, the Court will not reiterate each sides' arguments at length as to each individual motion in limine. Rather, the Court will give a simple explanation along with a brief analysis and any relevant parameters. Additionally, the Court's rulings on these motions are interlocutory. Depending on how certain evidence is presented at trial—particularly if the "door is opened" for any particular topic—the Court may reconsider its decision.

By way of explanation, this incident occurred while Layton was working for ERT on various projects in North Dakota. At some point during his tenure there, Layton was arrested for driving under the influence while operating a company vehicle. Eventually, Layton entered into a plea agreement for reckless driving. His commercial driver's license ("CDL") was subsequently suspended.[2]

Under Federal Rule of Evidence 403, the Court must weigh the competing interest of (1) the probative value of any evidence, and (2) whether prejudice, confusion, delay, or other dangers will result if it is introduced. "Applying Rule 403 to determine if evidence is prejudicial . . . requires a fact-intensive, context-specific inquiry." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 386 (2008). A Court has broad discretion in this inquiry. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).

First, ERT asserts that it does not seek to impugn Layton's character with this evidence, but to bolster its argument that even with a DUI charge and CDL suspension, it wanted to keep Layton as an employee because of his work on various projects. Under Rule 403, the Court finds that this information—while probative—would be highly prejudicial. Layton's DUI charge has little to do with the case at bar. This situation does not corroborate or disprove whether Layton had a disability, whether ERT accommodated his disability, nor illustrate how his employment with ERT ended. Additionally, ERT's behavior relative to Layton's DUI charge and CDL suspension is not necessarily

---

[2] It is unclear whether this was a temporary or permanent suspension.

MEMORANDUM DECISION AND ORDER - 4

indicative of its behavior during the time of their separation.[3] That said, if, during its

case, ERT wishes to provide testimony that Layton was a valuable employee, they could

simply state that even when he lost his CDL at one point, they kept him on; however, no

details of why he lost his CDL need be given.

Second, ERT contends that Layton needs this evidence to support one of his

claims. After Layton and ERT parted ways, he obtained a job with a company called

Fisher Construction. Layton claims that he lost that job, in part, because the company

found out about his past DUI charge and that this information could have only come from

ERT. Eventually, Layton obtained a new job at the Idaho National Laboratory ("INL").

As part of the current action, Layton is claiming lost wages from the time he lost

his job with Fischer until he started at the INL. Layton claims—not as an official cause of

action, but in support of his other claims—that ERT retaliated against him, tampered with

his personnel file, and tipped off Fisher Construction to his prior DUI charge.[4]

This claim does appear speculative—after all Fisher Construction could have

received the same information from a simple background check—but Layton is free to

present his testimony and ERT is free to refute that testimony.

---

[3] After all, to say that ERT accommodated Layton when he lost his CDL (while arguably true) and that this then proves they accommodated him when he was disabled is tenuous at best. Accommodating a person who lost his CDL is different that accommodating a person who has a disability.

[4] Of course, any claim that Fisher Construction wrongfully discharged or improperly refused to hire him because of a DUI charge rather than a DUI conviction is a claim against Fisher Construction who is not a party to this case.

Regardless, the Court will not allow Layton to open the door to an interference/retaliation argument without some detail. Therefore, Layton must understand that if he presents testimony concerning lost wages from his time at Fisher Construction or claims ERT somehow was involved in retaliatory, or tampering, conduct, the DUI charge will likely come in as ERT must be allowed a fair opportunity to defend itself.

In short, this Motion is GRANTED in PART and DENIED in PART. The Court will not allow into evidence any testimony concerning the DUI charge. If ERT desires to say that Layton was a good employee who they supported, they can simply say that even when he lost his CDL, they kept him on. Second, if Layton wishes to pursue his position that ERT tampered with his file, retaliated against him in tipping off Fisher Construction to his DUI, or that ERT is responsible for lost wages because of his being let go from Fisher Construction, that is his prerogative. The ramifications of that, however, are that the DUI situation will most likely come in, as ERT will have to defend itself against such claims.

2.  ERT's Affirmative Defenses

**DENIED**.

In this Motion, Layton seeks an order prohibiting ERT from presenting evidence or facts in support of six of the eight affirmative defenses it raised in its Answer. Dkt. 3. Layton's purported reason for such a request is that, in his estimation, these defenses "have no facts supporting them or are completely irrelevant." Dkt. 24, at 3. This request is somewhat difficult to address.

MEMORANDUM DECISION AND ORDER - 6

First, to date, the Court's involvement has been extremely limited in this case, as neither party filed any discovery motions or dispositive motions. The sole motion filed in this case related to reimbursement of certain costs and fees associated with a failed mediation. In short, the Court has made no formal rulings that affect either the law or the facts of this case and is simply not in a position to rule on the legality, or factual support, of ERT's defenses as Layton requests.

Second, this particular motion appears akin to a motion for summary judgment in that Layton is asking the Court to find, as a matter of law, that ERT's defenses are invalid. As just noted, while the Court does not have the background to make such a determination, a motion in limine is also not the appropriate forum for such a request. If Layton wanted a firm ruling on ERT's affirmative defenses (or even simply to strike them), he should have petitioned the Court via an appropriate motion.[5]

Now, to be sure, some of ERT's affirmative defenses are purely legal in nature (such as ERT's first affirmative defense: failure to state a claim under Federal Rule of Civil Procedure 12). A defense such as this would have been dealt with in legal motions

---

[5] The Court is not placing a total prohibition on ruling on affirmative defenses in Motions in Limine—in fact it has done so before. *See e.g. Cusack v. BendPak, Inc.,* No. 4:17-CV-00003-DCN, 2018 WL 4390715, at *11 (D. Idaho Sept. 13, 2018). In that case, however, the parties extensively briefed the individual defenses and whether any particular defense found support in the record. The Court would require the same of the parties here. If Layton wanted to exclude a specific defense, he should have explained in detail what the evidence was and why it did not support that defense. Here, his blanket statement that none of the defenses "have . . . facts supporting them or are completely irrelevant and misplaced" is simply not enough. Dkt. 24, at 3.

before the Court and not at trial before a jury—but, again, that was not done here. ERT

obviously will not be presenting a Rule 12 argument to the jury for their consideration.

Additionally, because a case begins broad and narrows through discovery, if ERT

does not have any facts, evidence, or testimony in support of a particular defense it

originally pleaded, presumably that defense will not come up at trial.[6] Asking the Court,

however, to wholesale preclude six of ERT's eight affirmative defenses is improper and

unnecessary at this point.

In short, the Court cannot find as a matter of law that ERT's affirmative defenses

must be precluded, but frankly does not see this as an issue at trial. As ERT points out

"there are not significant legal issues surrounding the . . . trial. Rather, there exist

substantial factual issues surrounding the end of Layton's employment relationship with

ERT." Dkt. 33, at 2. The Court will allow any factual evidence or testimony that validly

supports any claim or defense. The motion is DENIED.

If either party believes that the relevancy of this ruling changes during trial, they

can address it outside the presence of the jury and the Court will make a determination at

that time.

   3.   Documentary Evidence

**GRANTED in PART; DENIED in PART**.

In this motion, Layton asks the Court to rule that three documents (or more

---

[6] The Court will clearly not allow ERT to argue theories that have no factual or legal basis.

MEMORANDUM DECISION AND ORDER - 8

accurately two types of documents and one specific document) are "per se admissible" at

trial. Layton asks that the Court preemptively admit:

1. The deposition testimony of the parties and witnesses.

2. Defendant's signed responses to Interrogatories.

3. A letter from ERT's former attorney to Plaintiff's Counsel.

Again, this request is formulated somewhat oddly. Frankly, very few things are

admissible "per se" at trial. The Federal Rules of Evidence mandate that proper

foundation, authentication, or other relevant testimony is necessary for any evidence;

however, for all intents and purposes, the parties are not at odds here. That is to say, ERT

(and the Court) agree that deposition testimony can be utilized at trial in accordance with

Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 612 and 613, and that

discovery responses could be introduced for impeachment purposes under Federal Rule

of Evidence 608.

Thus, the Court will not affirmatively say that these documents are admissible

(simply because it has not seen them yet) however, it is likely that there will be no

problems with their admissibility at trial.

As for the attorney letter, however, the Court cannot rule on its admissibility at

this time. Layton must lay the proper foundation and bears the burden of establishing its

admissibility under applicable Federal Rules of Evidence. This motion is, therefore,

GRANTED in PART and DENIED in PART.

4. Layton's Disability

**DENIED**.

MEMORANDUM DECISION AND ORDER - 9

In his final motion, Layton asks the Court to rule as a matter of law that he was disabled at the time of his termination. Again, this opportunity has passed.[7]

While it is true that the deposition testimony in the record seems to indicate that ERT thought Layton had a "limitation," but not a disability (a potential misunderstanding of the law), this issue would have been more appropriately presented at summary judgment. Layton is, of course, free to argue his position that this was a misunderstanding of the law, but asking the Court to rule on a prima facie element of the case—whether he had a disability—with a mere three paragraphs of briefing is not appropriate.

Additionally, while it also appears that ERT's arguments will be focused more on the facts surrounding the end of Layton's employment at ERT—whether he was terminated or resigned—not whether he had a disability in the first instance, it has not acquiesced this point.

Whether or not Layton had a disability, whether he could perform his job, and whether ERT accommodated him are all questions that underlie the parties' behavior at the close of their relationship and are all highly relevant to whether there was a violation of the law. The Court will not take the opportunity to weigh these factors away from the jury.

Finally, Layton asserts that he should not have to go through the time and expense of calling an Orthopedic surgeon to testify that, as a wheelchair bound individual, Layton

---

[7] Alternatively, the Court does not have sufficient evidence to make such a determination.

was limited in his ability to walk—a major life activity—and thus had a qualifying disability under the ADA. Nonetheless, proving that he had a disability is Layton's burden, and in the absence of a stipulation from ERT, he must proffer whatever testimony or evidence he deems necessary to meet that burden—even if he himself sees his disability as obvious and apparent.[8]  Layton's motion for a determination that he was disabled is DENIED.

## B. **Defendants' Motion in Limine**

### 1.  Unemployment Benefits

**GRANTED in PART, DENIED in PART.**

ERT's first motion in limine seeks exclusion of documents and testimony related to Layton's claim for unemployment benefits.

Here, some background is helpful.

After Layton's employment ended with ERT, he filed an unemployment claim with the Idaho Department of Labor ("the Department"). It appears that in the original proceedings, ERT claimed that Layton was "discharged," that he was not at fault for his separation from ERT, and that the owner had simply decided they should "part ways." Upon this record, the Department found that Layton "[was] not discharged for work-related misconduct" and awarded his claim for unemployment benefits. Dkt. 39, at 29.

---

[8] The Court takes no position on whether an Orthopedic surgeon is necessary in this case.

Some months later, ERT decided—in response to a litigation hold letter issued at the outset of this litigation according to Layton—to appeal the Department's granting of benefits. At that appeal hearing, ERT asserted that Layton was terminated for misconduct; specifically, that he had falsified time cards and received a DUI. Upon this basis, the Department reversed its earlier finding and denied Layton benefits. The denial was later affirmed on appeal.

ERT correctly notes that under Idaho Code section 72-1368(11), decisions relating to unemployment have no preclusive effect on any subsequent proceedings outside that chapter. In other words, ERT cannot use the Departments' findings to support or deny any claims in this case. Hearkening to this principle, ERT seeks an order from the Court excluding all information related to Layton's claims for unemployment benefits.

The Court agrees with this premise. As the Court recently noted, "another fact finder's conclusions . . . should not be imposed [on a] jury" when the evidentiary and proof standards utilized are not the same and the ultimate objective is different. *See Fuller v. Dep't of Corr.*, No. 1:13-CV-00035-DCN, 2019 WL 332395, at *3 (D. Idaho Jan. 25, 2019). In this case, that concept applies. The question before the jury in this litigation is not whether Layton was entitled to unemployment benefits, but whether he was discriminated against because of his disability. Accordingly, the documents, in themselves, do not have any bearing on this case.

That said, Layton does not want to introduce this evidence to prove whether or not he was entitled to unemployment benefits or even whether or not he had a disability and was discriminated against. Layton wants to introduce the unemployment file for the sole

MEMORANDUM DECISION AND ORDER - 12

purpose of impeaching ERT and its varying reasons as to how and why his employment ended. In other words, it appears that Layton could care less where the documents came from, or what the outcome of those proceedings were, but wants to introduce specific information contained within them.

Upon review, the Court concludes that because the documents themselves are irrelevant to the current case, they will not be admitted into evidence. That said, some of the information contained within the documents is relevant and, therefore, Layton will be allowed to illicit testimony from ERT that it changed its position regarding his separation and, if it becomes necessary, he may use the unemployment documents for impeachment purposes.[9]

Each side is admonished to tell their respective witnesses of this ruling, explain how to approach the subject, and that any accidental reference to the Idaho Department of Labor, unemployment benefits, or the outcome of those proceedings will be stricken.

ERT's motion to exclude evidence of Layton's claim for unemployment benefits is GRATED in PART and DENIED in PART. While the documents themselves will not come in as evidence—redacted or otherwise—they can be used for impeachment purposes if necessary.

---

[9] For example, Layton can ask how ERT characterized his departure and whether that changed over time. If, and only if, ERT denies that it took a conflicting position, can Layton bring up the unemployment documents. Even then, he cannot reference what they are, but could simply read what ERT's position was and ask if that was a statement ERT made at one time.

2.  Other ERT Employees

**GRANTED**.

In this Motion, ERT asks that Layton be precluded from presenting testimony from other ERT employees regarding alleged discrimination by ERT. Layton confirms that he does not intend to submit such evidence.[10]

3.  Layton's Work Performance

**DENIED**.

In its final motion, ERT asks that the Court preclude Layton from providing testimony that his work performance was satisfactory. ERT asserts that this type of testimony would be self-serving and is not relevant to the claim of discrimination.

ERT cites a 40-year-old case from outside this Circuit finding that a plaintiff's perception of his or her own work performance is irrelevant. *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980). While not binding on this Court, it should be noted that even this case does not stand for the proposition that such testimony is inadmissible, but simply that it should not be considered.

In the present case, however, the Court finds that Layton's perception of his abilities—and in turn his performance—is highly relevant. As noted, the jury will have to weigh whether Layton had a disability, whether he could perform his job, and whether ERT accommodated him. Imbedded within the question of whether a person can perform

---

[10] If any testimony presented at trial opens the door on this topic, a hearing outside the presence of the jury will be held to consider the issue and how to proceed.

MEMORANDUM DECISION AND ORDER - 14

his or her job (with or without an accommodation) is whether his or her performance was up to par.

Additionally, while this type of testimony may be self-serving, ERT will have a full opportunity to offer testimony in rebuttal. Layton can surely give his personal opinion as to his performance and ERT will have an opportunity to respond—either with testimony refuting Layton's assertions that his performance was satisfactory, with closing argument that his perception is irrelevant, or possibly even a jury instruction.

The Court does not know what consequences may come from such testimony, but it will not preclude it at this time. ERT's motion that Layton cannot testify as to his performance is DENIED.

## C. **Other Objections**

In accordance with Local Rule 16.3(c), both parties objected to various trial submissions filed by the opposing party. The Court requires these objections in an effort to streamline trial. Some of them can be ruled upon before trial; some cannot. And while a party is free to raise any objection it deems appropriate during trial, the Court appreciates the advance notice of where disagreements may arise.

Objections to a specific witness or a specific exhibit should be raised the night prior to—or the morning of—that expected witness's testimony or the submission of that particular exhibit. The Court will initially address each objection outside the presence of the jury. A ruling may follow, or the Court may need to hear from the witness or see how an exhibit is presented before making a final ruling.

Objections to jury instructions or the verdict form will be addressed during the

Court's informal jury conference—and the subsequent formal conference—following the

close of evidence.

That said, the Court wishes to specifically highlight three topics that have been

raised in the party's objections (Dkts. 37, 38) and provide some preliminary analysis.

1.  Layton's Work Performance

First, in one of his objections, Layton asserts that ERT plans to call two witnesses

solely for the purpose of impugning his work performance. Layton asserts that this

testimony will be irrelevant as his work performance is irrelevant in light of ERT's claim

that it did not terminate Layton for work performance issues. The problem with this

concept is that it is not entirely clear that ERT will take this position at trial. They appear

to have taken it before, but without hearing the evidence and argument at trial, the Court

does not know if they actually intend to call into question Layton's performance.

Furthermore, this topic is closely tied to the Court's ruling above that work

performance is an issue in this case insofar as it relates to whether Layton could perform

the necessary tasks of his job and whether ERT provided him with a reasonable

accommodation. The Court is allowing Layton to opine on these matters and it may allow

others to do so as well. Each party can represent what weight, if any, the jury should give

that testimony, and each can impeach the other side if necessary, but the Court cannot

broadly rule on this matter at this time.

2.  Documentary Evidence

Second, ERT half-heartedly objects to Layton's identification of deposition

MEMORANDUM DECISION AND ORDER - 16

transcripts and discovery responses as exhibits, claiming (as in the motion in limine on the same issue) that these items are cumulative of live testimony or not the best evidence (again, in favor of live testimony) and that the Court should limit the use of these items to those purposes outlined in applicable rules. As noted above, the Court will do just that. This evidence may be utilized, but only as allowed under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

3.   Punitive Damages

Third, and finally, ERT raises the issue of Layton's request for punitive damages in his Complaint. *See* Dkt. 1, at 6.

As ERT correctly notes, Layton's inclusion of punitive damages in his prayer for relief was in error. Under Idaho Code section 6-1604(2) a claim for punitive damages cannot be included in a complaint, but can only be added via motion—either during the course of litigation or at trial.

In this case, Layton has not moved for the inclusion of punitive damages at trial, nor shown a reasonable likelihood of proving facts sufficient to support such a claim. Accordingly, at this time, Layton will not be allowed to make a claim for punitive damages at trial. If appropriate, following the evidence submitted at trial, Layton could make such a motion. *See e.g., Cusack v. Bendpak, Inc.*, No. 4:17-CV-00003-DCN, 2018 WL 1768030, at *7 (D. Idaho Apr. 12, 2018); *Murray v. City of Bonners Ferry*, No. 2:15-CV-00081-REB, 2017 WL 4318738, at *18 (D. Idaho Sept. 28, 2017).

## V. ORDER

The Court HEREBY ORDERS:

1.  Layton's Motions in Limine (Dkt. 24) are GRANTED in PART and DENIED in

    PART as outlined above.

2.  ERT's Motions in Limine (Dkt. 34) are GRANTED in PART and DENIED in

    PART as outlined above.

3.  The Court grants, denies, or withholds ruling on Layton and ERT Objections

    (Dkts. 37, 38) as outlined above and as will be determined at trial.

DATED: April 9, 2019

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 18