UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HEATH LAYTON,<br><br>Plaintiff,<br><br>v.<br><br>EAGLE ROCK TIMBER, INC.,<br><br>Defendant. | Case No. 4:17-cv-00259-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court is Plaintiff Heath Layton's Motion for Directed Verdict. Dkt. 56. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court DENIES Layton's Motion.

# II. BACKGROUND

In this case, Layton brought a single cause of action against Eagle Rock Timber, Inc. ("ERT"): disability discrimination in violation of the Americans with Disabilities Act ("ADA"). Dkt. 1. A four-day trial began on April 15, 2019. At the close of his case-in-

chief, Layton moved for judgment as a matter of law[1] on the elements of disability and

qualified individual.[2] The Court denied the Motion.

Subsequently, after the Court's informal jury instruction conference, Layton's

counsel made a formal objection to the jury instructions, arguing (as a renewed Rule 50

motion) that the elements of "disability" and "qualified individual" were not disputed and

that the instructions and verdict questions on those topics should be modified or excluded.

Layton's Counsel specifically expressed concern that leaving the question about whether

Layton had a disability on the verdict form[3] might cause the jury to conclude Layton had

not met his burden and "needed to prove more than was already presented." Dkt. 56, at 7.

The Court denied the motion and objection and did not modify the verdict form.

At the conclusion of trial, the jury did not return a verdict in Layton's favor. Dkt.

---

[1] Often, this type of motion is referred to as a "directed verdict." Terminology aside, the motion is one in the same. *See* Fed. R. Civ. P. 50 advisory committee's notes 1984 (referencing the subdivision's title— "judgment as a matter of law"—but noting that "in the interest of simplicity, the traditional term, 'directed verdict,' is retained.").

[2] To "establish a prima facie case of employment discrimination under the ADA, a plaintiff must prove three elements: (1) the plaintiff is disabled within the meaning of the ADA; (2) the plaintiff is a qualified individual able to perform the essential functions of the job, either with or without reasonable accommodations; and (3) his employer terminated him because of his disability." *Harshbarger v. Sierra Pac. Co.*, 26 Fed. Appx. 707, 709 (9th Cir. 2002); Americans with Disabilities Act (ADA) of 1990 §§ 102, 201; 42 U.S.C. §§ 12112, 12132.

[3] The three questions on the jury verdict form were:

> **Question 1.** Has the plaintiff proved, by a preponderance of the evidence, that he was disabled within the meaning of the ADA?
> **Question 2.** Has the plaintiff proved, by a preponderance of the evidence, that he was subjected to an adverse employment action?
> **Question 3.** Has the plaintiff proved, by a preponderance of the evidence, that the adverse employment action was based in whole or in part on his disability?

Dkt. 51, at 1.

51. Layton then timely filed a Renewed Motion for Judgment as a Matter of Law (Dkt. 56) on May 16, 2019. In his Motion, Layton argues for judgment as a matter of law, but also that—in the event the Court does not find in his favor—a new trial should be granted. The Court will address each motion in turn.

### III. LEGAL STANDARD

#### A. Federal Rule of Civil Procedure 50

"A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion. Rather, it is a renewed Rule 50(a) motion. Under Rule 50, a party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)." *Id.*

"[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Rather, the Court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.*

The "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2008). The

Court "can overturn the jury's verdict and grant such a motion only if there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002) (internal citations omitted). If there is "sufficient evidence before the jury on a particular issue, and if the jury instructions on the issue were correct, then the jury's verdict must stand." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir. 1985).

Importantly, "[b]ecause it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *Go Daddy Software*, 581 F.3d at 961. "Thus, a party cannot properly 'raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion.'" *Id.* (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)).

However, Rule 50(b) may be satisfied by an ambiguous or inartful Rule 50(a) motion. *Id.* (citing *Reeves v. Tuescher*, 881 F.2d 1495, 1498 (9th Cir. 1989)). "Absent such liberal interpretation, the rule is a harsh one." *Id.* (internal quotation marks and citation omitted). When ruling on a Rule 50(b) motion based on grounds not previously asserted in a Rule 50(a) motion, the Court is "limited to reviewing the jury's verdict for plain error, and should reverse only if such plain error would result in a manifest miscarriage of justice."*Id.*. "This exception . . . permits only extraordinarily deferential review that is limited to whether there was *any* evidence to support the jury's verdict." *Id.* (emphasis in original) (citation omitted).

### B. Federal Rule of Civil Procedure 59

Federal Rule of Civil Procedure 59 outlines that a Court may grant a new trial "if the verdict is contrary to the clear weight of the evidence, is based on evidence which is false, or to prevent a miscarriage of justice." *Silver Sage Partners v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001); *see also Molski v. M.J.Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) ("Historically recognized grounds [for a new trial under Rule 59] include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the moving party." (internal quotation and citation omitted)).

"[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." *Murphy v. City of Long Beach,* 914 F.2d 183, 187 (9th Cir. 1990). "A jury instruction is erroneous if it 'misleads the jury as to the correct legal standard or does not adequately inform the jury on the law.'" *Altria Grp., Inc. v. United States,* 658 F.3d 276, 286 (2d Cir. 2011) (internal quotation marks and citation omitted). A new trial is not warranted on the basis of an incorrect evidentiary ruling unless "the ruling substantially prejudiced a party." *United States v. 99.66 Acres of Land*, 970 F.2d 651,658 (9th Cir. 1992).

The "district court may not grant a new trial simply because it would have arrived at a different verdict," *Silver Sage Partners*, 251 F.3d at 819, but only if the "trial court [has] a firm conviction that the jury has made a mistake." *Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1372 (9th Cir. 1987).

When evaluating a motion for new trial under Rule 59, the court can weigh the evidence, evaluate the credibility of the witnesses, and is not required to view the evidence from the perspective most favorable to the prevailing party. *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir.2000).

## IV. ANALYSIS

### A. Renewed Rule 50 Motion

As a threshold matter, the Court must address the scope of Layton's renewed motion for a directed verdict. As Layton admits in his briefing, during trial he "moved the court pursuant to FRE 50 for a directed verdict on the elements of disability and qualified individual." Dkt. 56, at 7, ¶ 7.[4] This acknowledgement aside, in the current Motion, Layton asserts he is seeking "a directed verdict that Plaintiff was disabled during all relevant times, that Plaintiff was a qualified individual during all relevant times, *that Plaintiff suffered adverse employment actions because of his disability*, and on lost wage damages." Dkt. 56, at 9 (emphasis added).[5]

Layton did not seek a pre-verdict directed verdict on the element of "adverse employment action" and, consequently, cannot do so now. It is well settled that this is an improper application of Federal Rule of Civil Procedure 50. As noted above, "a Rule 50(b)

---

[4] *See also* Dkt. 56, at 7, ¶ 9 ("[A]fter an informal jury instruction conference, counsel for Plaintiff put a formal objection on the record to the jury instructions, and renewed the Rule 50 Motion because 'Disability' and 'Qualified Individual' was not being contested.").

[5] The issues of "lost wage damages" more appropriately falls under Layton's request for a new trial. That is where the Court will review this request.

motion for judgment as a matter of law is not a freestanding motion. Rather, it is a renewed

Rule 50(a) motion." *Go Daddy Software, Inc.*, 581 F.3d at 961. Accordingly, as a renewed

motion, "a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the

pre-deliberation Rule 50(a) motion." *Id. See also* Fed. R. Civ. P. 50 advisory committee's

notes to the 1991 amendments ("A post trial motion for judgment can be granted only on

grounds advanced in the pre-verdict motion.")).[6]

In sum, Layton's motion for directed verdict on the issue of adverse employment

action is not properly before the Court and must be denied. Layton can proceed on his

renewed motion regarding the ADA elements of "disability" and "qualified individual" as

he previously raised each of those topics.[7]

During trial, Layton moved for a directed verdict on the elements of disability and

qualified individual claiming there was no dispute as to these elements. Then, as now,

Layton relies on the testimony of Rick Gokey—ERT's owner and manager—and his

"admission" that Layton was disabled, to argue the Court should have taken this issue away

---

[6] In addition, Layton's argument that judgment as a matter of law is appropriate on the element of adverse employment action is mistaken. Layton's assertions that "there is no dispute" that ERT took adverse employment action against Layton, that Gokey "admitted to violating the ADA" and that "there is no legally sufficient basis for a reasonable jury to find for the defendant" (Dkt. 56, at 9-10) flies directly in the face of the evidence presented at trial. In fact, the majority of trial was focused on this singular element: whether or not ERT took adverse employment action against Layton and whether or not Layton quit of his own accord. The testimony at trial was replete with factual disputes and the issues had to be submitted to a jury for a determination. Thus, even were Layton's Motion timely, his position is contradicted by the evidence and testimony in this case.

[7] Even then, as Layton observes, "the verdict form did not address the 'qualified individual' element of the case." Dkt. 56, at 7, ¶ 9. The Court, therefore can only assume that the jury did not find Layton was a qualified individual based on their answer to whether he had a disability and the associated finding of no damages.

from the jury and granted a directed verdict as a matter of law. While it is true that Gokey

acknowledged Layton was "limited" and "injured"—and further, that he would not dispute

Layton was "substantially limited in his ability to walk"—this is not the same as admitting

someone is "disabled." Even then, as the Court will explain below, the breadth and impact

of Gokey's testimony (regardless of the interpretation) is not as dispositive as Layton

suggests. The full colloquy of the testimony at issue is as follows:

> Q. All right. And so, do you agree that in March and April of 2017, from the date of his injury until his employment ended, that he was substantially limited in his ability to walk?
>
> A. He was limited. I don't have any expertise to say substantially. He was limited. He was on crutches, and so he had a work release.
>
> Q. Okay. And are you disputing the fact that he was disabled at that time?
>
> A. I don't –
>
> MR. GARDNER: Objection. Foundation, Your Honor.
>
> MR. WESSEL: Do you want some dates?
>
> THE COURT: Lay some more foundation.
>
> BY MR. WESSEL:
>
> Q. Okay. In the March -- well, let's say on April 27th -- well, throughout all of April 2017, are you disputing the fact that he was disabled at that time?
>
> MR. GARDNER: Objection. Still foundation, Your Honor.
>
> THE WITNESS: In my opinion, he was injured.
>
> THE COURT: Just a minute. Don't answer that until I make my ruling.
>
> THE WITNESS: Sorry.

THE COURT: That's all right. I think you need to ask -- rephrase your question, Mr. Gardner. I am assuming the word you are troubled with is "disabled."

MR. GARDNER: Correct, Your Honor.

THE COURT: Can you rephrase your question without using that word?

MR. WESSEL: Yes, I think, Your Honor.

Q. Are you disputing the fact that in April of 2017, Heath Layton was substantially limited in his ability to walk?

A. No.

Q. Okay. So, you agree that he was?

A. He was injured.

Q. All right. Well, let me -- you used a different word. Okay. Are you disputing the fact that he was substantially limited in his ability to walk?

MR. GARDNER: Objection. Asked and answered, Your Honor.

THE COURT: It has been asked and answered, and it was answered that, no, he's not.

MR. WESSEL: Not disputing that fact.

THE COURT: He's not disputing that.

BY MR. WESSEL:

Q. Okay. Are you disputing that Heath Layton could perform the essential functions as a project manager in April of 2017?

A. I'm not disputing that.

Q. Okay. So, he could do that?

A. He had an injury, and we had worked with Heath to understand the injury and work with him. He was limited to some things that he had done prior.

Q. He could do the essential functions?

A. Yes.

Dkt. 53, at 9-12.

Layton argues that Gokey's "admission" is clear and the testimony is sufficient to overcome his burden of establishing the first two elements of an ADA claim (disability and qualified individual). The Court disagrees—at least as to the application and impact of Gokey's testimony. To be sure, Gokey's testimony was clear—Layton was substantially limited in his ability to walk and he could perform the functions of his job[8]—but that doesn't mean such testimony was sufficient to prove the requisite elements under the ADA.[9]

---

[8] To some degree, this disagreement is a matter of semantics. ERT and Gokey were careful not to use the specific word "disability" throughout trial. Even then, Gokey's testimony of Layton's physical conditions and limitations is essentially the ADA definition of disability. As will be explained, however, this misses the mark. So too, ERT, in its post-trial briefing, spends a great deal of time arguing the differences between "limitation," "injury," and "impairment," and whether a temporary injury can be considered a disability under the ADA. No evidence, testimony, or argument on this was presented at trial. Again, the question is not simply whether Layton or Gokey think Layton was disabled, but whether the Court can find as a matter of law that Layton met the appropriate definitions under the ADA. Then—as now—the Court finds that it cannot make such a determination and that the issue was fairly and properly presented to a jury for resolution.

[9] As an aside, in small part, Layton accuses (albeit respectfully) the court of cutting him off when questioning Gokey and that this somehow altered his strategy. *See* Dkt. 56, at 2 ("The Court sustained the objection and instructed Plaintiff's counsel to move on because the witness was not disputing this fact."); Dkt. 56, at 11 ("Plaintiff intended to put on more evidence of Layton's disability, but when his counsel pressed Gokey about whether he was disputing Layton's disability, ERT objected and the Court stated as follows: THE COURT: It has been asked and answered, and it was answered that, no, he's not. MR. WESSEL: Not disputing that fact. THE COURT: He's not disputing that. It would be a miscarriage of justice to let the verdict stand when ERT induced Plaintiff to stop putting on evidence of Layton's disability because ERT was not disputing that Layton was disabled.").

The question then, is: should the court have ruled as a matter of law that Layton had a disability? The answer (then, and now) is no.

Layton argues that Gokey's testimony is sufficient to prevail on the elements of disability and qualified individual under the ADA. Layton goes so far as to claim that it was specifically because of Gokey's admission that he "did not put on additional evidence of these elements into the record, such as hiring a doctor to testify about Layton's disability." Dkt. 56, at 3.

First, this representation does not make sense. Layton could not—in the midst of trial—go hire a doctor to testify on his behalf. Layton previously indicated that he had "disclosed his orthopedic surgeon to testify that his [Layton's] broken ankle substantially limited [his] ability to walk," but said that it would be "unnecessary and costly to require Plaintiff to pay for an Orthopedic surgeon to come to trial to testify that a wheelchair bound individual is substantially limited in his ability to walk." Dkt. 24, at 4.

At that stage—dealing with motions in limine—Layton asked the Court to summarily rule that Layton had a disability. The Court concluded that it did not have sufficient information to determine the issue and that it would be left for trial.[10] The Court

_____

This is an overdramatization of what occurred. The Court sustained an objection and explained its reasoning for doing so—that the question had been asked, answered, and the way in which it was answered. The Court did not, however, foreclose Layton from asking Gokey other questions about Layton's disability, nor did it foreclose Layton from putting on evidence or the testimony of other witnesses on the same topic. The choice to "stop putting on evidence of Layton's disability" was not an inducement by ERT or the Court, but a strategic choice by Layton. And, as will be explained in Section IV(B), this choice was neither wrong nor right (at least in practice) as the jury was equipped to make a determination either way.

[10] Dkt. 41, at 10 ("[A]sking the Court to rule on a prima facie element of the case—whether he had a disability—with a mere three paragraphs of briefing is not appropriate.").

also held that "proving [] he had a disability is Layton's burden, and in the absence of a stipulation from ERT, he must proffer whatever testimony or evidence he deems necessary to meet that burden—even if he himself sees his disability as obvious and apparent." Dkt. 41, at 11. The Court also specifically noted that it took "no position on whether an Orthopedic surgeon is necessary in this case." *Id.* n.8. The Court ultimately concluded that based on the scant evidence before it at that time, it could not make a determination on Layton's disability before trial.

The Court's position continued at trial when the sole evidence of disability was provided by lay witnesses and limited evidentiary submissions. To "establish a prima facie case of employment discrimination under the ADA, *a plaintiff* must prove three elements . . . ." *Harshbarger,* 26 Fed. Appx. At 709. While there was testimony on this issue, it was conflicting and limited. In the end, the Court determined that Layton had not conclusively established that he had a disability as defined by the ADA—or more accurately, that *as a matter of law,* he had not made the requisite showing and that the issue should be presented to the jury.[11]

Layton rejects the idea that he needed to present more evidence in support of his disability in this case and particularly any notion that he should have provided medical testimony. Layton's point is well taken that testimony from a medical professional is not

---

[11] As the Court stated when ruling on Layton's Rule 50 motion during trial: "There is sufficient evidence to submit the issue of disability and qualified individual to the jury. There is not sufficient evidence to take the issues away from the jury as a matter of law, so I am denying both of those motions." Unofficial Transcript, April 17, 2019, pg. 73, ll 12-15 (cited only for context).

*required* to prove a plaintiff's disability. The Court has never so held. At the same time, however, *it is still a plaintiff's burden to establish his disability* and lay testimony is often insufficient.

A brief review of the relevant caselaw illustrates this principle and underscores the reality that this issue should have been decided before trial with the benefit of full briefing and potentially a hearing.[12]

It is well settled that "a plaintiff cannot self-diagnose her own disability." *Heit v. Aerotek Inc*, No. C15-1805-JCC, 2016 WL 6298771, at *3 (W.D. Wash. Oct. 27, 2016), *aff'd sub nom. Heit v. Aerotek, Inc.*, 726 F. App'x 648 (9th Cir. 2018).[13] *See also Astorga v. Idahoan Foods, LLC*, No. 1:18-CV-000195-DCN, 2019 WL 4120803, at *6 (D. Idaho Aug. 29, 2019) (collecting cases that outline a self-diagnosis is insufficient). Lay persons can opinion on symptoms, but cannot give diagnoses. *See Felkins v. City of Lakewood*, 774 F.3d 647, 652 (10th Cir. 2014). That said, the Courts in the aforementioned cases were dealing with the disability issue at summary judgment—specifically whether lay witness testimony was sufficient to create a triable issue of fact—and not trial.

In is also important to note that a formal diagnosis of a particularized medical

---

[12] The Court indicated as much in its decision on the parties' motions in limine, when it found that the issue of Layton's disability or limitation "would have been appropriately presented at summary judgment." Dkt. 41, at 10.

[13] On appeal, in an unpublished opinion, the Ninth Circuit upheld the District Court's decision finding that "lay witnesses like Heit, however, are incompetent to testify as to the existence of medical illnesses. While he is competent to testify about the effects of the alleged condition . . . the cause of such a condition is a medical question not within the certain knowledge of laymen, and must be proved by expert testimony." *Heit v. Aerotek, Inc.*, 726 F. App'x 648, 649 (9th Cir. 2018) (internal citations, quotations, ellipses, and brackets omitted).

condition is not always necessary in order to prove a disability. In *Head v. Glacier Nw. Inc.*, the Ninth Circuit explicitly held that "Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage. 413 F.3d 1053, 1062 (9th Cir. 2005). Rather, a plaintiff need only make a "minimal showing" that he or she has a "substantial impairment [affecting] the major life activities of sleeping, interacting with others, thinking, and reading." *Id.*

*Head* was recently overruled in *Murray v. Mayo Clinic*, 934 F.3d 1101 (9th Cir. 2019), wherein the Ninth Circuit clarified that the standard, or burden, in ADA cases is a "but for" standard, not "motivating factor" standard. Those standards are not at issue in this case, and even though the case has been overruled, the principle that medical testimony is not always necessary finds support in other circuits. *See e.g., Tesone v. Empire Mktg. Strategies*, No. 19-1026, 2019 WL 5850395, at *12 (10th Cir. Nov. 8, 2019) ("[n]o language in the ADA or implementing regulations states that medical testimony is required," and "[t]here is certainly no general rule that medical testimony is always necessary to establish disability.") (internal quotations and citations omitted); *Mancini v. City of Providence*, 909 F.3d 32, 42 (1st Cir. 2018) ("medical evidence was not required to establish that [the plaintiff's] knee injury constituted an impairment" because "a lay jury can fathom [a knee injury] without expert guidance."); *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 643 (7th Cir. 2010) (declining to require expert medical evidence where a plaintiff suffered from a back injury because he "described in detail the limitations [he] faced in his ability to care for himself"); *Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 361 (3d Cir. 2000)

("failure to present medical evidence of his impairment, in and of itself, [did] not warrant judgment as a matter of law" because plaintiff's "alleged medical difficulties (i.e., arm and neck pain) are among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury.").

Finally, the Court notes there are cases which indicate medical evidence and testimony—while not necessary for a diagnosis—may nonetheless be necessary in order to establish what is a "substantial limitation" in ADA cases. *See e.g., Neal v. Kraft Foods Glob., Inc.*, 379 F. App'x 632, 634 (9th Cir. 2010).[14]

The Court does not dispute that a broken bone *could* be considered a disability, *but* the burden is still on the plaintiff to prove that. In this case, the Court weighed the evidence and found it lacking. The Court's prior rulings stand. The question was best left to the jury. Even then, as will be discussed in the next section, the jury in this case could still have determined that Layton had a disability. The Court denies Layton's renewed motion for a directed verdict on the issues of disability and qualified individual.

---

[14] Upon review, it appears then that self-diagnosis of a *medical condition* is not allowed. That much is clear. A lay witness can testify about symptoms, but not a diagnosis. A medical condition or diagnosis, however, may be different and distinct from a disability—diabetes is different from a broken bone; while both may qualify as disabilities under the ADA, the first likely needs medical testimony, while the second may or may not. It also appears that lay testimony of a *disability* or *limitation* is frequently accepted as sufficient to defeat summary judgment (at the very least, it raises a triable issue of fact for trial) but, again, may or may not actually be sufficient at trial. Expert or "medical" testimony (i.e. from a medical professional) is likely necessary to establish medical conditions and limitations. Ultimately, the Court agrees that "[w]hether medical evidence is necessary to support a disability discrimination claim is a determination that must be made on a case-by-case basis." *Mancini v. City of Providence*, 909 F.3d 32, 39 (1st Cir. 2018). In this case, the Court is not explicitly finding that medical evidence was necessary to establish disability, simply that it could not rule that Layton had a disability as a matter of law.

## B. Rule 59 Motion

In this part of his Motion, Layton argues that "the Court improperly instructed the jury as to the law of disability, adverse employment action, and violation of the ADA and left the three question[s] about liability on the verdict form. The Court should have simply instructed the jury to determine Layton's damages. The verdict form substantially prejudiced Layton." Dkt. 56, at 10. The Court summarily dismisses Layton's assertions relative to adverse employment action and damages for the same reasons outlined above— that neither was raised during trial as required and that neither assertion finds support in the evidence presented at trial.

Initially, the Court notes that because it does not find that Layton is entitled to a directed verdict on the issues of disability and qualified individual, it naturally follows that the jury instructions that the Court gave during trial were appropriate. That said, independent of this, the Court wishes to highlight that even though the Court did not find sufficient evidence to support a finding of disability as a matter of law, the jury could have made such a finding as a factual matter.[15] In other words, the jury's verdict was reasonable, supported by the evidence, and does not warrant a new trial.

_____

[15] Thus, the idea that leaving the disability question on the verdict form suggested to the jury that Layton "needed to prove more than was already presented" (Dkt. 56, at 7) is misplaced. A jury is not privy to "directed verdicts," so the jury in this case would not have known the Court's position on the matter and the mere presence of the question does not necessarily suggest shortcomings either. Juries are asked to determine questions—even relatively simply questions—all the time. In this case, the jury could have determined Layton met his burden. The fact that they did not do that is not due to the jury instructions or the verdict form, because (as will be explained), the jury could have made such a determination. This further underscores the reality that it was likely a lack of evidence, rather than any other factor, that contributed to the jury's finding of no disability. And, based on what was presented at trial, a "no disability" finding is not clearly erroneous or against the weight of the evidence.

The Court begins with a review of two relevant jury instructions.

In jury instruction number 21, the Court outlined the elements Layton was required to prove to support his ADA claim. Dkt. 50, at 25. Critically, the Court instructed the jury that "major life activities are the normal activities of living that a nondisabled person can do with little or no difficulty, *such as walking* and caring for one's self." *Id.* (emphasis added).

In instruction number 22, the Court further instructed the jury that "a 'disability' under the ADA is *a physical or mental impairment that substantially limits one or more of the major life activities of such individual*" and that "a disability *need not be permanent* as long as it meets the above definition." Dkt. 50, at 26 (emphasis added).

Thus, the jury was well equipped to determine whether Layton had a disability or not and they could have done so based on the testimony at trial—limited as it was. Said differently, the jury could have concluded that Layton's testimony and Gokey's "admission" were sufficient to support a finding of disability.

It is crucial to note that the Court *did not* instruct the jury that medical evidence or medical testimony was required, [16] nor was the jury aware that the Court had determined

---

[16] Layton repeatedly makes the argument that ERT tricked, or confused, the jury by first agreeing that he was disabled, but then arguing in closing that Layton was not disabled, asserting he "should have called a doctor to testify." Dkt. 56, at 7. Counsel for ERT during closing stated as follows: "Now, sometimes in a case like this, a plaintiff will call a doctor or a physician to establish disability. Now, Mr. Layton did not do that in this case. So, you can ask yourself, is that enough? We submit that more proof was needed on this element to tip the scales in the plaintiff's favor." Unofficial Transcript, April 18, 2019, pg. 39, ll 9-14 (cited only for context). Thus, ERT did not argue medical testimony was *necessary*, only that it is sometimes used in cases like this and that more evidence (including potentially medical testimony) was necessary in

there were factual disputes that needed to proceed to the jury on this issue. The jury could have reasonable read the instructions and determined that a broken bone that temporarily limited Layton's ability to walk was a disability. Alternatively, similar to the Court, a jury could have also determined that Layton did not meet his burden to establish he had a disability. In this case, it appears the jury opted for the later, however, such a finding does not mean that the instructions were erroneous.

The Court next turns to the more relevant issue: the verdict form. Layton argues the verdict form in this case was so prejudicial that a new trial is necessary.[17] The verdict form the Court gave to the jury in this case read as follows:

> We the jury, impaneled and sworn in the above matter, unanimously find by a preponderance of the evidence as follows:

> **Question 1**. Has the plaintiff proved, by a preponderance of the evidence, that he was disabled within the meaning of the ADA?

> _____ Yes _____ No

---

this case. Ultimately, it would appear that the jury agreed Layton had not met his burden, but again, there was evidence from which a reasonable jury *could* have determined he was disabled. And they could have done this without medical testimony. Furthermore, the Court gave an instruction that attorney arguments *are not evidence* and instructed the jury that they must decide the issues based on the law as the Court provided it to them. In light of this instruction, any mention of medical testimony by ERT was, ultimately, irrelevant.

[17] Layton argues a new trial is necessary because of the errors outlined above, but also because were it not for the Court's failure to grant a directed verdict on all ADA elements (again, even though such directed verdict was never sought), the jury would have returned a verdict that included damages. As such, Layton suggests even if the Court grants the directed verdict now, a new trial must still be held to determine the amount of those damages. Dkt. 56, at 10. Again, this argument must be dismissed outright as there were numerous disputed facts in this case. Even assuming arguendo that the Court ruled in Layton's favor on the elements of disability and qualified individual, it could not have ruled as a matter of law then (during trial), nor now, on the element of adverse employment action. That was the crux of this case and the evidence and testimony at trial demonstrated there were numerous factual disputes. The Court properly presented those disputes to the jury and the jury determined the weight of the evidence did not support Layton's claims. A request for a new trial just for damages is at odds with the evidence presented at trial.

**Question 2**. Has the plaintiff proved, by a preponderance of the evidence, that he was subjected to an adverse employment action?

_____ Yes _____ No

**Question 3**. Has the plaintiff proved, by a preponderance of the evidence, that the adverse employment action was based in whole or in part on his disability?

_____ Yes _____ No

Dkt. 51, at 1-2.

Layton argues that the Court should not have presented question one to the jury for

consideration:

> The second and third questions were substantially prejudiced because of the improper first question. As soon as the jury had answered the first question on the verdict form in the negative—that Layton was not disabled, Layton had lost. The jury's answers to the other two questions were then substantially prejudiced by the first question.
>
> …
>
> If he was not disabled, the jury could not possibly find in his favor. Additionally, if Layton was not disabled, the third question cannot be answered in the affirmative. If Layton was not disabled, ERT could not have subjected him to an adverse employment action *because of his disability*.

Dkt. 56, at 11. This sequence of events and reasoning discounts one very important factor:

that question number two was a stand-alone question. Said differently, had question two

not been included, the Court would find more merit in Layton's argument. As it sits,

however, the jury distinctly—and without regard to any disability—found that ERT *did not*

take any adverse employment action against Layton period. Thus, the jury *could* have

found that Layton had a disability—or the Court could have instructed the jury on the

same—but they could have still, nonetheless, found that ERT did not take any adverse

employment action against Layton. Frankly, there are numerous combinations in which the jury could have answered the three questions on the verdict form that would have been acceptable. The only instances in which problems would have arisen is if the jury's responses had been incongruent or conflicting.[18] The combination that occurred in this case, however, is not one of those anomalies that cannot be logically or reasonably explained. Here, the jury felt that Layton had not proved he was disabled[19] and also that ERT had not taken any adverse employment action against him (regardless of whether or not he had a disability). The Court simply does not know what weight, if any, the jury gave to the question of whether Layton had a disability when determining whether an adverse employment action had been taken.[20]

In sum, Layton believes that because the element of disability had been conclusively proven, the Court should not have included the first question on the verdict form. As noted

_____

[18] For example, if the jury found that Layton did not have a disability ("no" on question one), was not subject to adverse action ("no" on question two) but that the adverse employment action was based on a disability ("yes" on question three) there would clearly be a problem.

[19] This is also a critical distinction. As has been explained, Layton forcefully argues that he had a disability. While ERT argues the differences between short-term disabilities, impairments and the likes, as the Court has already noted, this is irrelevant. Nobody in this case—the Court, ERT, or the jury—is disputing that Layton had or has a disability, only that he *failed to prove this.* ERT noted in closing that it was their position that more proof was needed on this element—maybe the jury felt the same way. Said differently, the jury may not have been making an affirmative determination that Layton *was not disabled,* but simply that he had not met his burden.

[20] The Court does not mean to be factious as there is the very real possibility that the jury's determination of question two *was* affected by their answer to question one and/or that their answer to question three was affected by their answer to either and/or both their answers to questions one and two, but the fact remains there is no way of knowing the jury's rational and arguing that the questions tainted one another is an assumption that cannot be proven. Alternatively, the questions should have affected the answers to one another, otherwise, the jury could have returned a verdict that did not make sense (as outlined in footnote 18).

in the prior section, however, the Court disagrees that he sufficiently proved that critical first element of an ADA claim. Second, Layton's assertion that question one somehow tainted the remaining questions is purely speculative. The jury instructions in this case were not erroneous, inadequate, or misleading. Nor was the verdict form. The jury's verdict may not have been favorable to Layton, but their decision was reasonable and stands.

A Court may grant a new trial "if the verdict is contrary to the clear weight of the evidence, is based on evidence which is false, or to prevent a miscarriage of justice," *Silver Sage Partners,* 251 F.3d at 819, or if the Court gave "erroneous jury instructions." *Murphy,* 914 F.2d at 187. Insofar as the court has already found that a directed verdict is not appropriate on the merits, nor that it should have changed the jury instructions or verdict form in any way, it is clear that a new trial is likewise unwarranted—on all issues collectively, or on just damages. Layton's Rule 59 Motion is DENIED.

## V. CONCLUSION

The Court will not grant a directed verdict on the elements of disability and qualified individual based on Gokey's testimony—or any other evidence or argument for that matter. Simply put, Layton did not meet his burden at trial. In addition, the Court finds that the jury instructions and the verdict form were proper and appropriate under the circumstances, and that the jury's verdict was not "contrary to the clear weight of the evidence," but was a reasonable outcome. The Court will not grant Layton's request for a new trial.

///

///

///

## VI. ORDER

The Court HEREBY ORDERS:

1. Layton's Motion for Directed Verdict (Dkt. 56) is DENIED.

DATED: January 7, 2020

David C. Nye
Chief U.S. District Court Judge